Marc P. Cook
Nevada Bar # 4574
Cook & Kelesis, Ltd.
517 S. 9th Street
Las Vegas, Nevada 89101
Tel: 702-737-7702
mcook@bckltd.com

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| NEIGHBORHOOD NEUROPATHY CENTER OF RENO LLC, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MEDRISK, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Neighborhood Neuropathy Center of Reno LLC ("NNCR" or "Plaintiff") brings this Class Action Complaint against Defendant MedRisk, LLC ("MedRisk" or "Defendant") to stop Defendant's practice of sending unsolicited fax advertisements and to obtain redress for all similarly situated persons. Plaintiff, for its Class Action Complaint, alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including an investigation conducted by its attorneys.

## PARTIES

1. Plaintiff Neighborhood Neuropathy Center of Reno LLC is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business located at 1475 Terminal Way, Unit C-2, Reno, Nevada 89502.

2. Defendant MedRisk, LLC is a limited liability company organized and existing under the laws of the State of Delaware. Its principal office address is 2701 Renaissance Blvd., Suite 200, King of Prussia, Pennsylvania 19406. MedRisk does business throughout the United States, including in the State of Nevada and in this District.

**JURISDICTION & VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"). The alleged Class consist of over 100 persons each, there is minimal diversity, and the claims of the class members when aggregated together exceed $5 million. Further, none of the exceptions to CAFA applies.

4. The Court has personal jurisdiction over Defendant because Defendant is registered to do business in the State of Nevada, regularly conducts business in the State of Nevada and within this District, and Defendant directed the faxes at issue to Plaintiff who is located in this District.

5. Venue is proper in this District because a significant portion of the events described throughout this Complaint took place within this District and the faxes were sent to Plaintiff in this District.

**COMMON ALLEGATIONS OF FACT**

6. This case challenges Defendant's practice of sending unsolicited fax advertisements.

7. The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA" or the "Act"), 47 U.S.C. § 227, *et seq.* and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent fax advertisements without the recipient's prior express consent, invitation, and permission. The JFPA provides a private right of action that includes statutory damages of $500 per violation and

appropriate injunctive relief. Upon information and belief, Defendant has sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the JFPA. (*See* "MedRisk Faxes," a true and correct copy of which is attached hereto as Exhibit A.)

8. The MedRisk Faxes promote the services and goods of Defendant, namely by soliciting Plaintiff to become a provider for MedRisk clients by accepting lower payments than Plaintiff charges for its services. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

9. Unsolicited faxes cause concrete and particularized legal harm and damages to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's time that would have been spent on something else. A junk fax also invades the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

10. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the JFPA.

11. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being sent in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

**FACTS SPECIFIC TO PLAINTIFF**

12. Between February 2019 and July 2019, Defendant transmitted by telephone facsimile machine at least nine (9) unsolicited faxes to Plaintiff. (*See* Ex. A.)

13. MedRisk profited by and received the benefits of marketing of its products and services and is a responsible party under the JFPA.

14. Defendant created or made the faxes attached as Exhibit A, which Defendant knew or should have known advertises Defendant's goods or services (namely, soliciting Plaintiff to accept MedRisk clients at a reduced cost) that Defendant intended to and did in fact distribute to Plaintiff and the other members of the Class.

15. The Fax attached as Exhibit A is part of Defendant's work or operations to market Defendant's goods or services, which are performed by Defendant and/or on behalf of Defendant. Exhibit A constitutes material furnished in connection with Defendant's work or operations.

16. Plaintiff has never invited nor given permission to Defendant to send the faxes nor did Plaintiff have any prior relationship with Defendant at the time the faxes were sent or otherwise.

17. On information and belief, Defendant faxed the same, or substantially similar, unsolicited facsimile to Plaintiff and more than 40 other recipients without first receiving the recipients' express permission or invitation.

18. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

19. Further, Defendant's facsimile did not display any opt-out notice as required by 47 C.F.R. § 64.1200. Accordingly, neither Plaintiff nor the class members had any means to put an end to the receipt of future faxes.

**CLASS ACTION ALLEGATIONS**

20.     In accordance with Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this class action pursuant to the JFPA, on behalf of the following class:

> **MedRisk Junk Fax Class**: All persons who (1) on or after four years prior to the filing of this action through the date on which notice is sent to the Class, (2) were sent, by Defendant or on Defendant's behalf, (3) a telephone facsimile message substantially similar to the faxes attached as Exhibit A, (4) from whom Defendant claims it obtained prior express permission or invitation to send those faxes in the same manner as Defendant claims it obtained prior express permission or invitation to fax the Plaintiff.

21.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or it parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

22.     <u>Numerosity</u>: The exact number of members within the Class is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant sent unsolicited fax advertisements to hundreds if not thousands of persons who fall into the defined Class. The exact number of members of the Class can only be identified through Defendant's records.

23.     <u>Commonality</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

a. Whether the Defendant sent unsolicited fax advertisements;

b. Whether the Defendant's faxes advertised the commercial availability of property, goods, equipment, or services;

c. Whether Defendant procured prior express invitation or permission from the recipients to send the faxes;

d. Whether the Defendant sent the faxed advertisements knowingly or willfully such that treble damages are warranted; and

e. To the extent Defendant claims there was any established business relationship, which there was not, whether the faxes contained an "opt-out notice" that complies with the requirements of § 227(b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements.

24. <u>Typicality</u>: The Plaintiff's claims are typical of the claims of all class members. The Plaintiff received the MedRisk Faxes sent by or on behalf of the Defendant advertising goods, equipment, and services of the Defendant during the relevant time period. The Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendant has acted the same or in a similar manner with respect to the Plaintiff and all the class members.

25. <u>Adequate Representation</u>: The Plaintiff and its counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff is interested in this matter, has no actual conflicts with any of the other class members, and has retained experienced class counsel to represent the Class.

26. <u>Conduct Similar Towards All Class Members</u>: Class certification is appropriate because the Defendant has acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and corresponding declaratory relief appropriate. The Plaintiff requests such relief as authorized and appropriate by 47 U.S.C. § 227, *et seq.*

27. <u>Predominance, Superiority, and Manageability</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

    a. Proof of the claims of the Plaintiff will also prove the claims of the Class without the need for separate or individualized proceedings;

    b. Evidence regarding defenses or any exceptions to liability that the Defendant may assert and prove will come from the Defendant's records and will not require individualized or separate inquiries or proceedings;

    c. The Defendant has acted and continues to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

    d. The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

    e. This case is manageable as a class action in that the Defendant identified persons or entities to receive the fax transmission and it is believed that the Defendant's computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages, liability and damages can be established for the Plaintiff and the Class with the same common proofs, statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner and placed into a common fund for the benefit of all class members, a class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense, a class action will contribute to uniformity of decisions concerning the Defendant's practices, and as a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

**CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq.***
**(On Behalf of Plaintiff and the MedRisk Junk Fax Class)**

28. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

29. The JFPA makes unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . ." 47 U.S.C. § 227(b)(1)(C).

30. The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

31. The faxes sent by Defendant advertised the availability of MedRisk's services, specifically its network of clients that Plaintiff could accept at a reduced cost. The purpose of the MedRisk faxes was to expand MedRisk's healthcare providers in Nevada. Further, the MedRisk Faxes were unquestionably commercial in nature (as opposed to being merely informative) and constitute advertisements under the JFPA.

32. Plaintiff and the other class members never gave prior express consent, invitation, or permission to receive the faxes.

33. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § 227 (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

    a. a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements—knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

   b. a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful—thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth"; and

   c. a statement advising the recipient that he or she may opt-out with respect to all of his or its facsimile telephone numbers, and not just with respect to the number or numbers at which fax advertisements have been received from the sender—thereby instructing a recipient on how to make a valid opt-out request for all of his or its fax machines.

34. The requirement of (a) above is incorporated from § 227(b)(D)(ii) of the Act. The requirement of (b) above is incorporated from § 227(b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (c) above are contained in § 227(b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § 227(b)(2)(D)(ii) of the Act. Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements. As a result of such requirements, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxes advertisement gave "prior express permission or invitation" to receive the faxes nor can the sender claim the exemption from liability contained in § 227(b)(C)(1) of the Act.

35. **The Faxes.** Defendant sent the faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiff and members of the MedRisk Junk Fax Class. The faxes constituted an advertisement under the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the MedRisk Faxes. There was no established business relationship, and even if there had been the faxes fail to contain any opt-out language at all. The faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements. Defendant violated the JFPA and the regulations promulgated thereunder by sending the faxes via facsimile transmission to Plaintiff and members of the MedRisk Junk Fax Class.

36. **Defendant's Other Violations of the Act.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the MedRisk Junk Fax Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). Defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
10

37.     The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the MedRisk Junk Fax Class to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. § 227(b)(3), *et seq.* The Act also provides that injunctive relief is appropriate. *Id.*

38.     The JFPA is a strict liability statute. The Defendant is liable to the Plaintiff and the other members of the MedRisk Junk Fax Class even if it did not intend to send the faxes or to send them without first obtaining prior express invitation or permission.

39.     Defendant knew or should have known that: (a) the Plaintiff and the other members of the MedRisk Junk Fax Class had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services; (b) the faxes constituted an advertisement; and (c) the faxes did not apprise recipients of their legal right to opt-out.

40.     The Defendant's actions caused damage to the Plaintiff and the other class members. Receiving the Defendant's junk faxes is annoying, harassing, an invasion of Plaintiff's privacy, and caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's fax machine. The Defendant's faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing, and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's business activities. The Defendant's faxes unlawfully invaded the Plaintiff's and other MedRisk Junk Fax Class Members' privacy interests and right to be left alone. Finally, the injury and property damage sustained by Plaintiff and the other members of the MedRisk Junk Fax Class from the sending of Defendant's advertisements occurred outside of Defendant's premises.

41.     As a result of Defendant's conduct, Plaintiff and the other members of the MedRisk Junk Fax Class are each entitled to, pursuant to § 227(b)(3)(B) of the Act, a minimum of $500.00 in damages for each violation of such Act.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
11

42. Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, pursuant to § 227(b)(3)(C) of the Act, treble the amount of statutory damages recoverable by Plaintiff and the other members of the MedRisk Junk Fax Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of itself and the Class, prays for the following relief:

A. An order certifying this case as a class action on behalf of the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing its attorneys as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, to be paid into a common fund for the benefit of the Plaintiff and the class members;

C. An order declaring that Defendant's faxes constitute unsolicited advertisements, that Defendant sent the faxes without first obtaining prior express invitation, permission, or consent of the recipients, that the faxes lack the legally required opt-out language, and enjoining Defendant from further violations, and otherwise protecting the interests of the Class;

D. An award of pre-judgment interest;

E. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

F. Such further and other relief the Court deems reasonable and just.

# JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated:  **NEIGHBORHOOD NEUROPATHY CENTER OF RENO LLC**, individually, and on behalf of all others similarly situated,

By:  /s/
One of Plaintiff's Attorneys

Marc P. Cook
Nevada Bar # 4574
Cook & Kelesis, Ltd.
517 S. 9th Street
Las Vegas, Nevada 89101
Tel: 702-737-7702
mcook@bckltd.com

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiffs and the Alleged Class*

*pro hac vice to be filed