1  Joel E. Tasca, Esq.
   Nevada Bar No. 14124
2  Emil S. Kim, Esq.
   Nevada Bar No. 14894
3  BALLARD SPAHR LLP
   1980 Festival Plaza Drive, Suite 900
4  Las Vegas, Nevada 89135
   Telephone: (702) 471-7000
5  Facsimile:  (702) 471-7070
   tasca@ballardspahr.com
6  kime@ballardspahr.com

7  *Attorneys for Defendant MedRisk, LLC*

8              **UNITED STATES DISTRICT COURT**

9                  **DISTRICT OF NEVADA**

<table>
<tr><td>

10  NEIGHBORHOOD NEUROPATHY<br>CENTER OF RENO, LLC, individually<br>11  and on behalf of a class of similarly<br>situated individuals,<br>12<br><br>13                  Plaintiff,<br><br>14  v.<br><br>15  MEDRISK, LLC, a Delaware limited<br>liability company,<br>16<br>                 Defendant.

</td><td>

Case No. 3:19-cv-00619-LRH-WGC<br><br>**DEFENDANT MEDRISK, LLC'S<br>MOTION FOR SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)**

</td></tr>
</table>

17      Pursuant to Federal Rule of Civil Procedure 56, Defendant MedRisk, LLC

18  ("MedRisk"), by and through its attorneys of record, hereby move for summary

19  judgment.  In support of this motion, MedRisk relies on the following points and

20  authorities, the attached declaration and exhibits, the filed documents in this action,

21  and any argument the Court may hear.

22              **POINTS AND AUTHORITIES**

23  **I.     INTRODUCTION**

24      Plaintiff's sole claim – under the Junk Fax Prevention Act, 47 U.S.C. § 227 *et*

25  *seq.* ("JFPA") – fails as a matter of law because the faxes that form the basis for the

26  claim were not "unsolicited advertisements."  The undisputed facts demonstrate that

27  Plaintiff was part of MedRisk's provider network at the time the faxes were sent, and

28  MedRisk sent the faxes purely for informational purposes so that Plaintiff could

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

identify MedRisk clients and appropriately process patients associated with MedRisk clients. Because the faxes at issue were informational, and not "unsolicited advertisements," they did not – as a matter of law – violate the JFPA.

## II.   STATEMENT OF UNDISPUTED FACTS

MedRisk is a specialty managed care organization in the workers' compensation realm, which means that MedRisk serves network client payers (*e.g.*, insurance companies, self-insured employers) by, among other things, linking payers to MedRisk's network of participating health care providers. In some instances, MedRisk will contract with certain companies, such as OptumHealth Care Solutions, Inc. ("Optum"), to serve as an intermediary network to give MedRisk network clients access to even more health care providers, such as Optum network providers that elect to opt into MedRisk's network. Declaration of Jennifer Hermann ("Hermann Decl."), ¶ 8.

MedRisk is responsible for keeping all of its network providers informed of the identity of new MedRisk network clients, so that providers understand that patients associated with a new MedRisk network client should be recognized and processed as MedRisk network patients. Hermann Decl., ¶ 9. For this reason, MedRisk sends faxes to keep MedRisk network providers informed of new MedRisk network clients. As set forth in MedRisk's Provider Relations Administration Manual: "client listings are distributed to providers monthly. Please pay special attention to these notices as they often call out new clients who are now working with MedRisk." *Id.* It is not part of MedRisk's business model to sell anything to the providers in its network. Hermann Decl., ¶ 10.

In 2017, Plaintiff became a provider in the Optum network and Plaintiff also simultaneously opted in to be included in MedRisk's network. Hermann Decl., ¶ 11. From then to the present day, Plaintiff has continuously been part of the MedRisk network.

In 2019, after Plaintiff already was part of MedRisk's network, Plaintiff received the alleged faxes that form the basis for its Complaint. Hermann Decl., ¶ 12. These

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

2

faxes varied in their specific content, but they all were entitled "Network News," and they said "MedRisk Client Update" or "MedRisk Client Listing Update."  Hermann Decl., Ex. D. The faxes then generally identified new MedRisk clients, or contained lists of MedRisk clients, and they provided both reminders that patients associated with such clients should be processed as MedRisk network patients, and they contained information about processing.  *Id.* For example, one fax instructed: "Please notify MedRisk before initiating treatment on these patients by calling us at 800-225-9625.  All bills associated with these clients should be sent to MedRisk to avoid delays in claims processing.  Please share this critical information with your staff." *Id.*

Several of these faxes recognized the ongoing relationship between MedRisk and the fax recipient (*i.e.*, Plaintiff), containing such statements as "we . . . are fortunate to partner with you," or "we are thankful to team up with your clinics." *Id.*

Based on these faxes, Plaintiff, on behalf of a putative class, alleges a single claim for alleged violation of the JFPA, contending that the faxes constituted "unsolicited advertisements."  (ECF No. 1 ¶¶ 28-42).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 authorizes summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden on showing that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To do so in a case where, as here, the non-moving party bears the burden of proving a claim, the moving party may either: (1) present evidence to negate an essential element of the non-moving party's case; or (2) demonstrate that the non-moving party lacks evidence to establish an element essential to that party's case.  *Id* at 323-24; *see also Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1144 (D. Nev. Apr. 26, 2017).

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

Once the moving party satisfies its initial burden, the burden shifts to the non-movant to "go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial." *Walker*, 259 F. Supp. 3d at 1144. The non-moving party cannot defeat summary judgment by relying on mere speculation, conjecture, or fantasy. *O.S.C. Corp. v. Apple Comput., Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986); *accord Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). If the non-moving party fails to carry her burden, then the "court has a duty to grant the motion for summary judgment." *O.S.C. Corp.*, 792 F.2d at 1467.

## IV.   MEDRISK IS ENTITLED TO SUMMARY JUDGMENT

The JFPA prohibits the sending of an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Generally, a fax is an "unsolicited advertisement" if (1) the fax, on its face, promotes the commercial availability or quality of any property, goods, or services, or (2) the fax is a pretext for a larger advertising scheme. *Robert Mauthe, M.D., P.C. v. Optum, Inc.*, No. CV 17-1643, 2018 WL 3609012, at *3 (E.D. Pa. July 27, 2018). The FCC has determined that informational faxes, such as regularly-scheduled newsletters, do not qualify as unsolicited advertisements in violation of the JFPA. *Id.* at *10 (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01, 25973).

Here, Plaintiff alleges that the MedRisk faxes at issue were advertising because they "solicit[ed] Plaintiff to accept MedRisk clients at a reduced cost." (Compl. ¶ 14). Plaintiff's theory of advertising reflects a fundamental misunderstanding of MedRisk's business and the underlying facts in this case.

As set forth above, it was only after Plaintiff's election in 2017 to opt into the MedRisk network that Plaintiff received (in 2019) the MedRisk faxes at issue. Thus, contrary to Plaintiff's theory of advertising, MedRisk's faxes were not "soliciting"

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

4

1   Plaintiff to become part of the MedRisk network; Plaintiff already was part of the
2   MedRisk network when it received the faxes.

3       Nor is there any other basis to contend that the faxes at issue were advertising.
4   First, the faxes facially include no commercial advertisement – *i.e.*, they do not promote
5   the sale of any good or service to the providers to whom they are sent.  Instead, they
6   simply advised providers as to the identity of new MedRisk network clients, and
7   provided instructions for processing MedRisk network patients.

8       Second, the MedRisk faxes are in no way a pretext for a larger advertising
9   scheme.  As an initial matter, Plaintiff does not even allege that the faxes were any
10  sort of "pretext" for a larger advertising campaign, and so any such theory fails for that
11  reason alone.  *Machonis v. Universal Survey Ctr., Inc.*, 2020 U.S. Dist. LEXIS 31330,
12  *25 (S.D.N.Y. Feb. 21, 2020) ("[A]s Plaintiff has not pleaded any allegation that the
13  Fax was intended to serve as a pretext for Defendant's advertising of any commercial
14  products or services (and, indeed, has conceded in its opposition papers that it is not
15  relying on any such theory of liability), I recommend that the Complaint be dismissed
16  under Rule 12(b)(6) for failure to state a viable claim under the TCPA.").

17      Moreover, the notion that the faxes at issue could have been a pretext for
18  advertising is belied by the fact that it is not part of MedRisk's business model to sell
19  **anything** to the providers in its network.  Instead, the faxes serve MedRisk's network
20  clients by informing providers to recognize and process patients associated with those
21  network clients as MedRisk network patients.

22      Factually analogous case law supports MedRisk's arguments.  For example, in
23  *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir.
24  2015), a pharmacy benefit manager routinely faxed healthcare providers lists of
25  medicines available in the health care plans offered by the plan sponsors for whom the
26  manager worked.  *Id.* at 220.  "That way, the healthcare providers will know which
27  medications are covered by their patients' healthcare plans."  *Id.*  The *Sandusky* court
28  rejected the argument that these faxes were advertising for purposes of the JFPA,

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

5

reasoning that they were purely informational: "They call items (medications) and services (Medco's formulary) to Sandusky's attention, yes.  But no record evidence shows that they do so because the drugs or Medco's services are for sale by Medco, now or in the future.  In fact, the record shows that Medco has no interest whatsoever in soliciting business from Sandusky. . . .  The record instead shows that the faxes list the drugs in a purely informational, non-pecuniary sense: to inform Sandusky what drugs its patients might prefer, based on Medco's formulary—a paid service already rendered not to Sandusky but to Medco's clients."  *See also Orrington*, 2019 WL 4934696, at **15-16. ("[T]he undisputed facts show that Scion processes claims for dentists on behalf of UHC and other insurance providers.  It maintains an online Portal through which dentists in the supported networks may submit claims. It trains dentists in the supported networks free of charge and sent a fax advising them of available training on new features of the online system.  The fax offered no products or services for sale. . . . This fax was not an advertisement.").

Likewise here, MedRisk's faxes to Plaintiff did not intend to sell anything to Plaintiff.  Rather, in service of MedRisk's own network clients, these faxes simply informed Plaintiff, as a MedRisk network provider, of the identity of MedRisk network clients.

In sum, the facts are undisputed that the faxes at issue were not "unsolicited advertisements," and Plaintiff's JFPA therefore fails as a matter of law.

## V.   CONCLUSION

For these reasons, the Court should grant MedRisk's motion, dismiss the claim against MedRisk with prejudice, and grant MedRisk such other relief as the Court deems proper.

DATED this 9th day of March, 2020.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

DMWEST #18245944 v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

BALLARD SPAHR LLP

By: /s/ Joel E. Tasca
    Joel E. Tasca, Esq.
    Nevada Bar No. 14124
    Emil S. Kim, Esq.
    Nevada Bar No. 14894
    1980 Festival Plaza Drive, Suite 900
    Las Vegas, Nevada 89135

*Attorneys for Defendant MedRisk, LLC*

7

1   ## CERTIFICATE OF SERVICE

2         I certify that on March 9, 2020, and pursuant to FRCP 5, a true copy of the

3   foregoing **DEFENDANT MEDRISK, LLC'S MOTION FOR SUMMARY JUDGMENT**

4   was filed via the Court's CM/ECF System and electronically served on the following

5   parties:

6

7   Marc P. Cook
    COOK & CELESIS, LTD.
    517 S. 9th Street

8   Las Vegas, NV 89101

9   Patrick H. Peluso
    Taylor T. Smith

10  WOODROW & PELUSO, LLC
    3900 East Mexico Avenue, Suite 300

11  Denver, CO 80210

12  *Attorneys for Plaintiff*

13

14                                           By: /s/ Adam Crawford
                                                 An employee of Ballard Spahr LLP
15

16

17

18

19

20

21

22

23

24

25

26

27

28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

8

DMWEST #18245944 v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | OptumHealth Care Solutions, LLC Provider Agreement |
| B | OptumHealth Care Solutions, Inc. Workers' Compensation & Auto Liability Opt-in / Opt-Out Form |
| C | MedRisk's Provider Relations Administration Manual |
| D | Copies of the faxes attached to NNCR's complaint in this action |

4

DMWEST #18245944 v1

1  Joel E. Tasca, Esq.
   Nevada Bar No. 14124
2  Emil S. Kim, Esq.
   Nevada Bar No. 14894
3  BALLARD SPAHR LLP
   1980 Festival Plaza Drive, Suite 900
4  Las Vegas, Nevada 89135
   Telephone: (702) 471-7000
5  Facsimile:  (702) 471-7070
   tasca@ballardspahr.com
6  kime@ballardspahr.com

7  *Attorneys for Defendant MedRisk, LLC*

8              **UNITED STATES DISTRICT COURT**

9                  **DISTRICT OF NEVADA**

10 NEIGHBORHOOD NEUROPATHY          Case No. 3:19-cv-00619-LRH-WGC
   CENTER OF RENO, LLC, individually
11 and on behalf of a class of similarly   **DECLARATION OF JENNIFER**
   situated individuals,                   **HERMANN IN SUPPORT OF**
12                                         **MEDRISK, LLC'S MOTION FOR**
                    Plaintiff,             **SUMMARY JUDGMENT**
13
   v.
14
   MEDRISK, LLC, a Delaware limited
15 liability company,

16                  Defendant.

17

18             **DECLARATION OF JENNIFER HERMANN**

19

20    1.  I, Jennifer Hermann, pursuant to 28 U.S.C. § 1746, declare as follows:

21    2.  I am Vice President of Provider Management for MedRisk, LLC

22    ("MedRisk").  My responsibilities include, among other things, oversight of

23    the contracting, credentialing and management of the MedRisk physical

24    medicine provider network.

25    3.  The facts discussed below are based on my review of MedRisk's business

26    records and the knowledge I have acquired in the course of my duties with

27    MedRisk, and are true and correct to the best of my knowledge and belief.

28

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

4.  Exhibit A hereto is a true and correct copy of the "OptumHealth Care Solutions, LLC Provider Agreement" between OptumHealth Care Solutions, LLC ("Optum") and Neighborhood Neuropathy Center of Reno, LLC ("NNCR"), which has been in effect from the end of 2017 to the present, and is contained in MedRisk's business records.

5.  Exhibit B hereto is a true and correct copy of the "OptumHealth Care Solutions, Inc. (Optum) Workers' Compensation & Auto Liability Opt-in / Opt-Out Form," under which NNCR in 2017 opted into, among other networks, the MedRisk network.   The foregoing Form is contained in MedRisk's business records.

6.  Exhibit C hereto is a true and correct copy of "MedRisk's Provider Relations Administration Manual," which has been in effect from 1996 to the present, and is contained in MedRisk's business records.

7.  Exhibit D hereto are true and correct copies of the faxes attached to NNCR's complaint in this action.

8.  MedRisk is a specialty managed care organization in the workers compensation realm, which means that MedRisk serves network client payers (*e.g.*, insurance companies, self-insured employers) by, among other things, linking payers to MedRisk's network of participating health care providers.   In some instances, MedRisk will contract with certain companies, such as Optum, to serve as an intermediary network to give MedRisk network clients access to even more health care providers, such as Optum network providers that elect to opt into MedRisk's network.

9.  MedRisk is responsible for keeping all of its network providers informed of the identity of new MedRisk network clients, so that providers understand that patients associated with a new MedRisk network client should be recognized and processed as MedRisk network patients.  For this reason, MedRisk sends faxes to keep MedRisk network providers informed of new

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

2

MedRisk network clients.  As set forth in MedRisk's Provider Relations Administration Manual: "client listings are distributed to providers monthly.  Please pay special attention to these notices as they often call out new clients who are now working with MedRisk."

10. It is not part of MedRisk's business model to sell anything to the providers in its network.

11. As demonstrated by Exhibits A and B hereto, in 2017, NNCR became a provider in the Optum network, and NNCR also simultaneously opted in to be included in MedRisk's network.  NNCR has been part of MedRisk's Network since 2017 when it signed the Form, a copy of which is attached hereto as Exhibit B, to the present.

12. All of the faxes that are attached as Exhibit D hereto were sent by MedRisk to NNCR in 2019.

Executed on this 3rd day of March, 2020.

/s/ *Jennifer N. Hermann*

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

3