# EXHIBIT B

EXHIBIT B

# WORKERS' COMPENSATION NETWORK ACCESS AGREEMENT

**THIS NETWORK ACCESS AGREEMENT** ("Agreement") between OptumHealth Care Solutions, Inc. ("OptumHealth"), a Minnesota corporation, and MedRisk, Inc., a Pennsylvania corporation ("Customer") (each referred to hereafter as a "Party" or collectively as the "Parties"), is effective June 28, 2012 ("Effective Date"), and sets forth the rights, responsibilities, and other conditions for access to OptumHealth's Participating Provider network.

## Article I
## Definitions

For the purposes of this Agreement, certain capitalized terms shall have the meanings set forth below:

**1.1 Administrative Access Fees:** Amount paid by Customer under this Agreement for access to OptumHealth's network of Participating Providers (may also be referred to as "Admin Fee").

**1.2 Clean Claim:** A claim that includes all information required for processing and has no material defect, impropriety, lack of any required substantiating documentation, or special circumstance(s) – such as, but not limited to, coordination of benefits, pre-existing conditions, subrogation, or suspected fraud – that prevents timely adjudication of the claim.

**1.3 Chiropractic Services:** Services provided by a chiropractor for treatment or diagnosis of neuromuscular-skeletal disorders. Chiropractic Services shall not include either the technical or professional component of X rays or any other radiological services, except in the case of a self-funded plan that has agreed to pay for X rays performed by a chiropractor, as permitted by applicable law.

**1.4 Claimant:** Any individual who is entitled to workers' compensation benefits through a Workers' Compensation Program.

**1.5 Day**: Day means a calendar day unless otherwise specified. Business days are Monday through Friday, excluding Federal Holidays.

**1.6 Network Client:** A workers' compensation insurance carrier, third party administrator, self-funded/self insured employer or other entity that is directly responsible for payment of Workers' Compensation Program claims and who contracts with Customer to allow Claimants access to Customer's chiropractic, occupational therapy and physical therapy provider organization and programs.

**1.7 Participating Provider:** A licensed or otherwise appropriately qualified chiropractic, occupational therapy, or physical therapy practitioner or other health care professional or entity who has a written provider agreement in effect with OptumHealth ("Provider Agreement"), directly or through another entity, who has been approved through the OptumHealth credentialing process to provide Chiropractic and/or Therapy Services to Claimants. OptumHealth agrees to attempt to omit as Participating Providers subject to this Agreement all practitioners who have agreed to be Participating Providers but who bill under the same Federal Tax Identification Number as practitioners who have not agreed to be Participating Providers, but in no circumstance shall a

provider be considered a Participating Provider if he or she has not been approved through the OptumHealth credentialing process to provide Chiropractic and/or Therapy Services to Claimants.

**1.8 Plan Summary**: A written summary, provided by OptumHealth to all of its Participating Providers that identifies Customer or Network Client as an OptumHealth approved client and sets forth the rates paid to Participating Providers and other specific requirements unique to Customer or Network Client, including, among other things, specific details relating to claims submission. As per the Provider Agreement, Participating Providers shall comply with the requirements in the applicable Plan Summary.

**1.9 Provider Fee**: Subject to the conditions set forth in Section 4.2, Customer is responsible for paying Participating Providers at the rate Participating Providers have agreed to in order to participate in the network. Provider Fees are outlined in the Fee Schedule set forth in Exhibit A.

**1.10 Geographic Service Area:** The state(s) or, if applicable, area(s) within any state as defined under applicable law or regulations, that are served by Customer upon the Effective Date of this Agreement, as well as any expansion areas resulting from and mutually agreed upon in writing by OptumHealth and Customer during the term of this Agreement. The Geographic Service Area is identified in the Fee Schedule set forth in Exhibit A.

**1.11 Therapy Services:** Those occupational therapy and/or physical therapy services and supplies recommended by a physician or other licensed practitioner of evidence-informed medicine for maximum reduction of physical or mental disability and restoration of a Claimant to his/her best possible functional level. Therapy Services shall not include either the technical or professional component of X rays or any other radiological services, except in the case of a self-funded plan that has agreed to pay for X rays performed by a therapist.

**1.12 Workers' Compensation Program:** The Chiropractic and Therapy Services related to workers' compensation coverage and comparable or associated health and disability plans (e.g., FECA plans) for work-related illnesses and injuries provided to Claimants by Participating Providers.

## Article 2
## OptumHealth Services

**Section 2.1 Participating Provider Network**. OptumHealth will enter into arrangements with providers to provide Chiropractic Services and Therapy Services to Claimants at rates set forth in Exhibit A. OptumHealth shall provide Customer with a template Provider Agreement with Participating Providers, which is considered Confidential Information, exclusively for purposes of Customer's compliance with obligations under this Agreement. If Customer is required by law or upon the advice of legal counsel deems it necessary for evidentiary purposes to resolve legal disputes to provide additional or more specific Participating Provider information, then OptumHealth shall produce this information, provided, however, that Customer shall comply with the process outlined by Section 9.13. Under no circumstances shall any disclosure under this Section relieve Customer of its obligations not to solicit Participating Providers and Customer expressly agrees to limit use of any of OptumHealth's Confidential Information obtained under this Section to compliance with the regulatory process as referenced in Section 6.2. OptumHealth shall only be responsible for providing access to its Participating Providers for Claimants of those Network Clients for which OptumHealth and Customer have mutually agreed to in writing. This Agreement is for the agreed upon Geographic Service Area.

OptumHealth does not warrant or represent that a particular provider will be a Participating Provider or that any particular provider will be available to a particular Claimant. Participating Providers are not agents or employees of OptumHealth, nor is OptumHealth, or any employee of OptumHealth, an employee or agent of any Participating Provider.

OptumHealth shall establish and maintain a credentialing and recredentialing process to which all Participating Providers shall be subject. OptumHealth shall provide Customer with a copy of OptumHealth's credentialing and recredentialing procedures via appropriate web access. Customer shall be permitted to conduct a comprehensive onsite evaluation of OptumHealth's credentialing and recredentialing procedures at any time upon reasonable notice and during normal business hours. OptumHealth's credentialing and recredentialing process shall comply with the applicable requirements of the National Committee for Quality Assurance or other accrediting agency reasonably acceptable to Customer and OptumHealth or as required by applicable law.

Customer, in its sole discretion, in lieu of engaging in direct provider contracting activities may from time-to-time recommend to OptumHealth that OptumHealth target certain Chiropractic or Therapy providers to become Participating Providers under this Agreement. Similarly, OptumHealth may inform Custom that it is targeting certain Chiropractic or Therapy providers to become Participating Providers under this Agreement. In either instance, following provision of the provider's name in writing to the other party for such purposes, OptumHealth will have ten (10) business days to confirm to Customer of OptumHealth's intent to recruit Customer's recommended provider as a Participating Provider. Further, following OptumHealth's initial interaction with the provider, OptumHealth will have ninety (90) calendar days to secure a Participation Agreement with such provider and send a Plan Summary. If after that time the recommended providers do not enter into a written Participation Agreement with OptumHealth, Customer may recruit such provider, without any reference to or reliance upon use of OptumHealth's name, through any means not otherwise prohibited by this Agreement. For providers who were Participating Providers prior to December 31, 2012, but will not be participating in the Workers Compensation Program after December 31, 2012, MedRisk will have the ability to recruit such providers directly after June 30, 2013 if OptumHealth has not re-contracted with such providers before June 30, 2013 unless otherwise agreed by the parties. In no case shall anything in this Agreement be construed to obligate OptumHealth to contract with or make use of any particular individual or entity or to prohibit OptumHealth from contracting with a provider.

**Section 2.2 Participating Provider Reports.** OptumHealth shall provide Customer with a data file containing Participating Provider demographic information by state or Geographic Service Area on a weekly basis ("Participating Provider Reports"). Participating Provider Reports are Confidential Business Information (as described in Section 9.13) of OptumHealth and may not be re-distributed by Customer to third parties or used outside of this Agreement.

**Section 2.3 Participating Provider Contractual Obligations.** OptumHealth reserves the right to enforce its obligations under its Provider Agreement with Participating Providers; when OptumHealth exercises such right, it shall bear responsibility to manage all legal and financial issues that are solely related to the Provider Agreement.

**Section 2.4 Participating Provider Communications.** OptumHealth reserves the right to communicate in its sole discretion as appropriate with its Participating Providers regarding the applicable provisions of this Agreement.

## Article 3
## Customer's Representations and Responsibilities

**Section 3.1 Customer Representation**. Customer represents that it is a preferred provider network.

**Section 3.2 Provider Agreements**. Customer must comply with all applicable provisions of the Provider Agreement between OptumHealth and Participating Providers, including but not limited to all federal and state regulatory requirements, as applicable. Customer must designate an individual to respond to Participating Provider inquiries that may arise during the term of this Agreement.

**Section 3.3 Provider Remittance Advice**. Customer is responsible for ensuring that an accurate provider remittance advice is sent with its claims payment to the Participating Provider and that the remittance advice identifies the source of the discounted rate as the OptumHealth Provider Agreement, consistent with this Agreement, including Exhibit A.

**Section 3.4 Participating Provider Communications**. As mutually agreed to by the parties, Customer shall be responsible for certain communications with Participating Providers concerning its duties and obligations under this Agreement or the Workers' Compensation Program, as applicable. All material Workers' Compensation Program changes must be approved in advance by OptumHealth. Customer shall obtain OptumHealth's written approval for communications relating to the Workers' Compensation Program or this Agreement prior to sending such communications to Participating Providers, which approval shall not be unreasonably withheld or delayed.

**Section 3.5 Participating Provider Reimbursement Rates.** The parties understand and agree that fair reimbursement to Participating Providers is fundamental to the success of the Workers' Compensation Program. Customer agrees that reimbursement levels paid to OptumHealth's Participating Providers will be based on the Fee Schedule set forth in Exhibit A. Customer represents that fee schedule amounts paid to Participating Providers are in accordance with Exhibit A, subject to applicable workers compensation law. Other than mandatory state fee schedules, Customer and OptumHealth agree to treat reimbursement rates as Confidential Business Information (as defined below in Section 9.13) to the greatest extent permissible under applicable law.

**Section 3.6 Non-Solicitation of Participating Providers.** Except as otherwise provided in this Agreement, upon the Effective Date; during the term of this Agreement and any previous agreements; and for twelve (12) months following a termination of this agreement for any reason ("the restricted period"), Customer agrees that it will not intentionally solicit any Participating Provider, directly or indirectly, or through an intermediary or intermediaries, whether on Customer's own behalf or on behalf of any other person or entity, regardless of the capacity in which Customer is acting, to enter into a contractual relationship with Customer or any affiliate or successor for Chiropractic or Therapy Services as set forth herein for Workers' Compensation Programs or other services offered by OptumHealth. However, in the event of termination of this Agreement by OptumHealth without cause, Customer may solicit Participating Providers upon receipt of OptumHealth's notice of termination. In the event of termination of this Agreement for any reason, the Administrative Access Fee listed in Exhibit A will continue to be payable to OptumHealth for services provided by Participating Providers for Workers' Compensation Programs during the term of this Agreement. At no time during the restricted period will Customer use data obtained through this Agreement for purposes of soliciting Participating Providers.

Customer acknowledges that any intentional violation of this Section 3.6 by Customer will be a material breach of the entire Agreement and cause irreparable injury to OptumHealth, that such

injury will be incapable of precise measurement and that, as a result, OptumHealth will not have an adequate remedy at law to redress the harm which such violations may cause. Therefore, in addition to OptumHealth's other rights and remedies OptumHealth may have under this Agreement, Customer agrees that OptumHealth shall be entitled to equitable relief without having to post any bond or other security, to restrain or enjoin any violation or threatened violation of this Section 3.6 by Customer. In addition to any other equitable and legal remedies which may be available to OptumHealth, Customer shall immediately pay to OptumHealth liquidated damages in the amount of One Hundred Thousand Dollars ($100,000.00).

The Customer agrees that the damages arising from a breach of this Section 3.6 are incapable of precise measurement, that the foregoing liquidated damages are a reasonable estimate of the damages OptumHealth would incur as a result of such breach and that such liquidated damages do not constitute a penalty. Pursuit or recovery of liquidated damages shall not affect OptumHealth's rights to seek and obtain equitable or injunctive relief, and Customer agrees that such remedies are cumulative.

**Section 3.7 Primary Network Designation.** Customer shall designate OptumHealth as 1) its primary Chiropractic and Therapy Services network entity in the Geographic Service Area to the extent Customer does not have its own network (i.e., direct contractual relationships with providers for these Services); and 2) if Customer has its own or multiple provider network relationships, Customer shall designate its own network as primary and OptumHealth's as the primary secondary network, having priority over other third-party networks. Upon request, Customer shall provide evidence of direct contractual relationships with providers to OptumHealth. If OptumHealth determines and gives timely notice to Customer that it does not intend to provide Participating Provider access in a particular area, Customer may directly contract and/or obtain these services from another network entity in such area.

Therefore, when Claimants access an OptumHealth Participating Provider for Chiropractic or Therapy Services in the Geographic Service Area, Customer (or its designee) shall apply, subject to applicable law, in order, 1) its own fee, if Customer has a direct contractual relationship; or 2) the Provider Fees set forth in Exhibit A.

**Section 3.8 Non-Exclusivity.** Subject to Section 3.7, the parties reserve the right to enter into other agreements similar to this Agreement with actual and potential competitors of each other on comparable or different terms and conditions, and to market and provide health services, managed care, or other services to Participating Providers and payor clients through such other arrangements.

**Section 3.9 Network Clients.** At the inception of this Agreement, Customer will provide OptumHealth with a list of its current Network Clients, including what type of entity such Network Clients are. OptumHealth reserves the right, at any time during the term of this Agreement, to reject provision of services to any Network Client. At no time during the term of this Agreement shall any Network Client function as an entity which would be prohibited by law from accessing Participating Providers under this Agreement. Customer may not add additional Network Clients to this Agreement or resell the network to a third party without mutual agreement with OptumHealth as set forth in Section 2.1. Notwithstanding the foregoing, Customer may present the OptumHealth network in soliciting or bidding for new Network Clients, but shall provide OptumHealth with notice of such inclusion and the right to reject any such new Network Client prior to implementation on behalf of itself and its Participating Providers. Customer must inform any proposed Network Client of the existence of the OptumHealth network and ensure Network Clients are continuously informed about

the OptumHealth network when required by applicable law. It is a material obligation of Customer to maintain a current list of Network Clients and Geographic Service Areas, which must be provided to OptumHealth at least every thirty (30) days for all "retrospective" Network Clients (those for which Customer does not provide prior notice to a Participating Provider of a proposed Claimant visit for Chiropractic or Therapy Services) and upon request for all Network Clients.

**Section 3.10 Reports and Notifications.** Customer shall provide OptumHealth, in a format approved by OptumHealth, with a monthly claims summary of all Participating Provider visits and payments associated with all Claimants using any Participating Provider. Customer will also provide OptumHealth with a quarterly claims summary of Claimants and date of service volume associated with each Participating Provider, including the total number of visits for all Participating Providers under this Agreement as well as the total number of visits to all Participating Providers. Customer shall also promptly notify OptumHealth of and make reasonable attempts to identify any provider who was not identified as a Participating Provider, but whose billing is associated with a Participating Provider's Tax Identification Number ("TIN").

**Section 3.11 Claimant Participating Provider Search.** Customer shall maintain network information in a provider portal, directory, or other means of communication, where Claimants or Network Clients can search the physical health network of Participating Providers provided per Section 2.2.

**Section 3.12 Real-Time Provider Portal.** Customer shall maintain a real-time portal or a call center in order for Participating Providers to obtain a list of Network Clients who have access to the OptumHealth network. The portal must be updated every thirty (30) days at a minimum. The portal or call center must also disclose either what activities payors are doing to actively encourage Claimants to use Participating Providers or disclose that payors accessing the network do not actively encourage Claimants to use a Participating Provider.

## Article 4
## Payment

**Section 4.1 Compensation to OptumHealth.** Customer shall pay OptumHealth in accordance with the reimbursement structure set forth in the attached Exhibit A.

By the 15th of each month, during the term of this Agreement, Customer will submit to OptumHealth a report identifying the compensation due OptumHealth for the previous month, based upon payments made to Customer by Network Clients for services delivered by Participating Providers. Customer shall pay OptumHealth by the last day of the reporting month, the "due date," via electronic fund transfer (EFT).

OptumHealth may terminate access of a specific Network Client based on continued non-payment to a Participating Provider. If OptumHealth wishes to terminate a Network Client for continued nonpayment, OptumHealth shall provide Customer with written notice of its intent to cancel the Network Client. Within five (5) business days after said written notice, Customer will transmit a copy of the notice to the Network Client, and the Network Client shall have fifteen (15) days to pay all non-current amounts owed to any Participating Provider before a termination becomes effective.

**Section 4.2 Participating Provider Reimbursement.** Customer shall be solely responsible for the processing and administration of all claims from Participating Providers, or ensuring same (such as by Network Client). Participating Providers will send to Customer, or Customer's designee, such as Network Client, all claims for Chiropractic Services and Therapy Services rendered to Claimants,

and Customer will timely forward Clean Claims to Customer's Network Clients for payment. Customer shall ensure the prompt payment and discharge of any claims from Participating Providers in accordance with the reimbursement structure described in Exhibit A within the timeframe required by applicable law. Customer shall comply, or ensure compliance, with any regulatory obligations, including but not limited to, prompt pay requirements, related thereto, as applicable. The obligation to pay for Chiropractic Services and Therapy Services rendered to a claimant is solely that of Customer. The Parties agree that OptumHealth has no obligation to pay and will not pay Participating Providers for Chiropractic Services and Therapy Services. However, upon request, Customer shall provide any applicable portion of a mandatory state fee schedule to OptumHealth.

## Article 5
## Responsibility for Damages; Participating Provider Insurance

**Section 5.1 Responsibility for Damages.** Each Party shall be responsible for any and all damages, claims, liabilities or judgments which may arise as a result of its own negligence or intentional or willful wrongdoing. Any costs for damages, claims, liabilities or judgments and any reasonable expenses related thereto incurred at any time by one party (the "Indemnitee") as a result of the negligence or intentional or willful wrongdoing of the other party (the "Indemnitor") shall be paid for or reimbursed by the Indemnitor. The Indemnitor may, at its election and upon the giving of timely notice to Indemnitee, assume charge of any investigation, defense or settlement of any claim made or suit brought against the Indemnitee, but Indemnitee, at its option, shall have the right and shall be given the opportunity at its own expense, to associate with the Indemnitor in the investigation, defense or control of such investigation or suit, and the Indemnitor shall make no settlement without consent of the Indemnitee, which consent shall not be unreasonably withheld. This provision shall survive the termination of this Agreement.

## Article 6
## Regulatory Compliance

**Section 6.1 Laws, Regulations, Licensure.** OptumHealth shall require each Participating Provider and all health care professionals employed by or under contract with such Participating Provider to maintain all federal, state and local licenses, certifications and permits, without material restriction, which are required to provide the services Participating Providers are obligated to provide under this Agreement, and shall comply, in all material respects, with all applicable statutes and regulations.

**Section 6.2 Regulatory Filing.** In accordance with the provisions of Section 2.1 and Section 9.13, in the event that Customer or Network Client is required to file this Agreement, any provider agreement or any filing in connection with Customer or Network Client's duties or obligations under this Agreement with federal, state or local governmental authorities or tribunals, Customer or its Network Client shall be responsible for filing the Agreement with such authorities as required by any applicable state statutes and regulations or evidentiary standard, provided, however, that OptumHealth shall cooperate with Customer in providing any necessary information and documentation so requested which is not subject to attorney-client privilege or Confidential Information under Section 9.13. OptumHealth may appropriately redact such information or documentation. If, following any such filing, the governmental authority requests changes to this Agreement, Customer shall propose its response for OptumHealth's review, which shall occur within ten (10) days or receipt. In the event any federal, state or local governmental authority requires a change to this Agreement that either OptumHealth or Customer deems to be material, either party may request renegotiation of the affected provisions of this Agreement. Such renegotiation shall occur within thirty (30) days following notice to OptumHealth.

## Article 7
## Books and Records

**Section 7.1 Maintaining Records.** OptumHealth shall maintain records that are usual and customary for the OptumHealth services in accordance with all applicable statutes and regulations. Any such records shall remain the property of OptumHealth, subject to any rights of Claimants or unless otherwise required by federal or state statutes and regulations.

**Section 7.2 Privacy and Release of Records.** OptumHealth and Customer shall maintain the confidentiality of all information regarding Claimants in accordance with any applicable law.

**Section 7.3 Examination of Records.** Upon reasonable notice, during normal business hours and at a reasonable time and place, either Party or its designee shall have the right to examine any records of the other Party that relate to such Party's obligations under this Agreement, including, without limitation, any records relating to the compensation owed OptumHealth under this Agreement and OptumHealth's credentialing of Participating Providers. All records maintained by either Party relating to its responsibilities under this Agreement shall be kept for at least ten (10) years after the date the records were created or any applicable period required by law or regulation, whichever is longer. A Party shall pay the copying cost for any records that it requests from , except that OptumHealth shall provide copies of the cover page, signature page and pertinent sections of any Participating Provider contracts, or the full Participating Provider contracts if specifically requested by any body with appropriate jurisdiction in accordance with Section 9.13, to Customer without charge in the event that these contracts are required in fee disputes to establish the Participating Provider's contractual obligation to accept Customer's reimbursement as payment in full.

If a Party examines the records of the other Party, the examining Party shall pay the examined Party:

1. the examined Party's reasonable employee costs related to the examination if such examination requires in excess of 16 hours of the examined Party's employees' time, and

2. any other reasonable costs incurred by the examined Party in complying with the examination request.

Subject to Section 7.4, no third party may examine any records without the prior written consent of the examined Party.

**Section 7.4 Government and Accrediting Agency Access to Records.** Federal and state government and accrediting agencies or any of their authorized representatives, shall have access to, and Customer and OptumHealth are authorized to release, all information and records or copies of such within their possession that are pertinent to and involve transactions related to this Agreement if such access is necessary to comply with accreditation standards, statutes or regulations applicable to Customer or OptumHealth.

## Article 8
## Term and Termination

**Section 8.1 Term of the Agreement.** This Agreement is for an initial term of one (1) year starting on the Effective Date. The "Anniversary Date" is the date that is one year after the Effective Date of

this Agreement and that same date each subsequent year. This Agreement, including any mutually agreed amendments, automatically renews each Anniversary Date for an additional one-year term unless terminated pursuant to Section 8.2.

**Section 8.2 Termination of the Agreement**. This Agreement may be terminated as provided below:

by either party after the initial term, without cause, upon one hundred and eighty (180) 'days written notice to the other party;

by OptumHealth, upon at least fourteen (14) days prior written notice to Customer, in the event Customer does not pay OptumHealth any amount owed within thirty (30) days of the date payment is due;

by either party upon thirty (30) days prior written notice to the other party in the event of a material breach by the other party of any term of this Agreement. The written notice shall specify the precise nature of the breach. In the event the breaching party cures the breach within thirty (30) days to the non-breaching party's reasonable satisfaction, this Agreement shall not terminate;

by either party immediately upon written notice to the other party if the other party ("subject party") becomes insolvent, files or has filed involuntarily against it a petition under the United States Bankruptcy Code, including a petition for Chapter 11 reorganization as set forth in the United States Bankruptcy Code, is adjudicated as bankrupt, or its business comes into possession, even temporarily, of any trustee in bankruptcy, or a receiver is appointed for it, or it makes a general assignment for the benefit of creditors. If any of the foregoing occurs, no interest in this Agreement: a) may be deemed an asset of creditors of the subject party; b) may be deemed an asset or liability of the subject party; or c) may pass by operation of law without the non-subject party's consent; provided, however, that the foregoing shall not limit the subject party's right to seek adequate protection under applicable law;

by either party immediately upon written notice to the other party in the event that the receiving is the subject of a liquidation or in the event the receiving party no longer has the ability to fulfill the purposes of this Agreement;

by mutual agreement of the parties at any time; or

by either party upon 30 days prior written notice to the other party due to a change in law subject to Section 9.12 of this Agreement.

**Article 9**
**Miscellaneous**

**Section 9.1 Notices**. All notices or other communications required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered personally, one day after delivery by commercial overnight delivery service, or if mailed, five business days after the date of mailing, addressed in accordance with the information set forth below:

| To OptumHealth: | To Customer |
| --- | --- |
| OptumHealth Care Solutions, Inc. | MedRisk, Inc |
| | ______________________ |

6300 Olson Memorial Highway, MN010-E151
Golden Valley, MN 55427
Attention: Contracts Admin

2701 Renaissance Blvd.
King of Prussia, PA 19406
Vice President, Provider Relations

**Section 9.2 Assignment.** Except as provided in this Section 9.2, neither party may assign any of its rights and responsibilities under this Agreement to any person or entity without the prior written consent of the other party, which shall not be unreasonably withheld. The parties acknowledge that an assignment of all or any of one party's rights and responsibilities under this Agreement to any entity controlling, controlled by or under common control with that party shall not require the other party's prior written consent. The Parties agree that the use of affiliated or non-affiliated subcontractors to assist in a party's performance is expressly permitted and shall not be deemed an assignment, subject to applicable law.

**Section 9.3 Entire Agreement.** This Agreement, including Exhibits as amended from time to time, constitutes the entire agreement among the parties with respect to the subject matter hereto. This Agreement replaces any prior written or oral communications or agreements between OptumHealth and Customer with respect to the subject matter hereof.

**Section 9.4 Amendment.** This Agreement may be amended only by a written amendment executed by both parties.

**Section 9.5 Relationship between Claimants and Participating Providers.** Nothing in this Agreement is intended to alter, change, or interfere with any relationship that exists between any Participating Provider and any Claimant who is the Participating Provider's patient. Each Participating Provider has the right and is encouraged to discuss with each Claimant pertinent details regarding the diagnosis of such Claimant's condition, the nature and purpose of any recommended procedure, the potential risks and benefits of any recommended treatment, and any reasonable alternatives to such recommended treatment. Nothing in this Agreement is intended to prohibit or restrict Participating Providers from advising or advocating on behalf of a Claimant.

**Section 9.6 Non-waiver.** The failure of either party to insist upon the strict observance or performance of any provision of this Agreement or to exercise any right or remedy shall not impair or waive any such right or remedy.

**Section 9.7 Survival of Terms.** Any provisions of this Agreement which, by their nature, extend beyond the expiration or termination of this Agreement shall survive the termination of this Agreement and shall remain in effect until all such obligations are satisfied.

**Section 9.8 No Third Party Beneficiaries.** This Agreement is intended solely for the benefit of the parties hereto, and no third parties shall have any rights hereunder or interest herein.

**Section 9.9 Use of Names.** During the term of this Agreement, Customer shall have the right to designate and make public reference to "OptumHealth" or "OptumHealth Care Solutions, Inc." by name in an accurate, factual manner, as the company managing or arranging for the provision of services provided by OptumHealth. Customer shall have the right to make public reference to OptumHealth by name in the course of identifying itself as the company accessing services provided by OptumHealth. Except as set forth above, neither party shall use the other's name, trademarks, or service marks, including in connection with any media or other press releases without the other party's prior written approval.

**Section 9.10 Resolution of Disputes.** In the event that any dispute, claim, or controversy of any kind or nature relating to this Agreement arises between the parties, the parties agree to meet and make a good faith effort to resolve the dispute. If the dispute is not resolved within 30 days after the parties first met to discuss it and either party wishes to further pursue resolution of the dispute, it shall be submitted to binding arbitration, where permitted by applicable law, in accordance with the rules of the American Arbitration Association ("AAA"). In no event may the arbitration be initiated more than one year after the date one Party first gave written notice of the dispute to the other Party. Any arbitration proceeding under this Agreement shall be conducted in in Chicago, Illinois. A single arbitrator engaged in the practice of law, who is knowledgeable about workers compensation medical claims adjudication, shall conduct the arbitration under the then current rules of the AAA.

**Section 9.11 Governing Law.** The validity and interpretation of this Agreement and the rights and obligations of the parties under this Agreement shall be governed by the laws of Minnesota .

**Section 9.12 Change in Law.** If any federal or state statute or regulation or any interpretation thereof (including, without limitation, any court order or ruling) at any time during the term of this Agreement (a) has a material and adverse effect on the ability of a party to receive the benefits it reasonably expects to obtain under this Agreement or (b) renders it illegal for a party to continue to perform under this Agreement in a manner consistent with the parties' intent, then the parties to this Agreement shall negotiate in good faith to amend this Agreement to bring it into compliance, while at the same time preserving the economic expectations of the parties, to the greatest extent possible. If this Agreement is not amended in writing within 60 days after one party notifies the other party of a compliance issue pursuant to this Section 9.12, the notifying Party shall have the right to terminate this Agreement.

**Section 9.13 Confidential Business Information.** The parties acknowledge that in the course of performing their obligations under this Agreement, either party may learn or receive confidential and proprietary information, including, but not limited to, trade secrets, business or organizational plans, customer lists, pricing, and underwriting information, concerning the other party or third parties to whom the other party has an obligation of confidentiality (collectively "Confidential Information"). Confidential Information shall not include information that: (a) was rightfully in the party's possession prior to receiving Confidential Information; (b) is currently or subsequently becomes available to the public through a source other than the receiving party; (c) the party develops internally, without reference to the other party's Confidential Information; or (d) the party receives from a third party on a non-confidential basis from a source, which to the best of such party's knowledge after due inquiry, is not prohibited from discussing such information by a legal, contractual or fiduciary obligation. Each party shall take all necessary steps to provide the maximum protection to secure the other party's Confidential Information. Each party agrees to take at least such precautions to protect the other party's Confidential Information as it takes to protect its own Confidential Information. The parties shall not utilize any Confidential Information belonging to the other party without the other party's prior written consent for any purpose other than performance under this Agreement. The parties agree not to disclose Confidential Information to third parties without the express prior written consent of the party to whom the information belongs, in which case the disclosing party shall obligate the third party to similarly protect Confidential Information. The parties further agree that they will not disclose Confidential Information to anyone within their respective organizations other than those employees with a need to know and who have been informed of the party's obligations under this Agreement. The parties may disclose Confidential Information to their attorneys, accountants, or other agents ("Representatives"), but only if they need to know the Confidential Information as described above. The parties shall inform each Representative of the confidential and proprietary nature of the Confidential Information. Upon termination of this Agreement, a party in possession of any Confidential Information belonging to the

other party shall either return such Confidential Information to the other party or destroy the Confidential Information, without retaining copies. If any Confidential Information is impossible or impracticable to return or destroy, the party holding such other party's Confidential Information shall remain bound by the terms of this section with regards to the applicable Confidential Information. Each party shall retain sole ownership of its own Confidential Information. The confidentiality obligations described herein will not restrict any disclosure required by order of a court or any government agency with jurisdiction under applicable law. The party being ordered to disclose the information shall give prompt notice to the other party of any such order and reasonably cooperate with the other party, at the other party's request and expense, to resist such order or to obtain a protective order.

**Section 9.14 Privacy and Security.** Relating to the privacy and security of patient health and financial information, OptumHealth and Customer agree that the information disclosed to each other and to other parties must be limited to the minimum amount necessary to carry out the purpose of the disclosure. OptumHealth and Customer further agree to comply with all applicable federal and state laws and with the terms of this Agreement, which may require the following activities:

a. To use reasonable administrative, physical and technical safeguards to prevent use or disclosure of protected information other than as provided by this Agreement,

b. To report to each other any known use or disclosure not provided for by this Agreement,

c. To ensure that any agents or subcontractors to whom protected information is provided agree to the same restrictions and conditions,

d. To afford individuals access to their protected information as required by applicable federal and state laws,

e. To make protected information available for amendment as required by applicable federal and state laws,

f. To make protected information available to provide an accounting of disclosures as required by applicable federal and state laws,

g. To make books, records and practices relating to the disclosure of protected information available to regulatory agencies as required by applicable federal and state laws,

h. To return or destroy all exchanged protected information at the termination of this Agreement, if feasible, as required by applicable federal and state laws, and

i. To prohibit any further disclosure of protected information unless required by law.

**IN WITNESS WHEREOF**, the parties have executed this Agreement, to be effective as of the Effective Date.

**OptumHealth Care Solutions, Inc.** **MedRisk, Inc.**

Mailstop: MN010-W120
6300 Olson Memorial Highway
Golden Valley, MN 55427

By: ______________________

Print Name: Jeff Groskloos

Title: CFO

Internal Control No.: [[ContractNumber]]
CS-40173

2701 Renaissance Blvd.

King of Prussia, PA 19406

By: ______________________

Print Name: Darrell L. DeMoss

Title: General Counsel

**Exhibit A**
**Compensation**

**Section 1**
**Provider Fees: Payment to Participating Providers**

When required by applicable state law, Customer or Network Client, as applicable, shall pay the Participating Provider according to the published standard state fee schedule. When allowed by and in compliance with applicable state law, Customer or its Client, as applicable, shall pay the Participating Provider (i) eighty percent (80%) of billed charges; (ii) eighty percent (80%) of any applicable state, federal or other governing agency fee schedule; or (iii) any established global or Day Rate, whichever is less.

Below is a table outlining the Geographic Service Area and Provider Fees. Inclusion of a state or the geographic areas specified within a state in the table below indicates such state is included in the Geographic Service Area.

| State | PT/OT Initial Evaluation | PT/OT Rate | Multiple Body Region | Work Hardening for CPT (97545) | Work Hardening for CPT (97546) | FCE one day | Chiropractic Services |
|---|---|---|---|---|---|---|---|
| AK | $90 | $90 | | $140 | $55 | $700 | $100 |
| AL | $65 | $65 | | $110 | $50 | $500 | $60 |
| AR | $65 | $65 | | $95 | $35 | $395 | $60 |
| AZ | $65 | $65 | | $75 | $35 | $425 | $60 |
| CA | $65 | $65 | | $75 | $35 | $395 | $60 |
| CO | $65 | $65 | | $80 | $40 | $450 | $70 |
| CT | $70 | $70 | $130 | $85 | $36 | $395 | $75 |
| DC | $70 | $70 | | $100 | $40 | $395 | n/a |
| DE | $85 | $85 | | $120 | $50 | $395 | $105 |
| FL | $57 | $57 | | $50 | $25 | $395 | $45 |
| GA | $65 | $65 | | $65 | $24 | $395 | $45 |
| HI | $68 | $68 | | $40 | $40 | $395 | $40 |
| IA | $75 | $75 | | $140 | $55 | $625 | $70 |
| ID | $75 | $75 | | $120 | $48 | $500 | $65 |
| IL | $90 | $90 | | $140 | $58 | $625 | $100 |
| IN | $80 | $80 | | $115 | $45 | $395 | $95 |
| KS | $65 | $65 | | $100 | $45 | $395 | $50 |
| KY | $65 | $65 | | $95 | $35 | $395 | $50 |
| MA | $60 | $60 | | $95 | $45 | $175 | $35 |
| MD | $60 | $60 | | $60 | $30 | $325 | $45 |
| ME | $70 | $70 | | $135 | $55 | $395 | $65 |
| MI | $70 | $70 | | $120 | $48 | $425 | $65 |
| MN | $75 | $75 | | $125 | $50 | $600 | $45 |
| MO | $80 | $80 | | $90 | $35 | $395 | $90 |
| MS | $82 | $82 | | $63 | $28 | $395 | $65 |
| MT | $68 | $68 | | $85 | $43 | $800 | $65 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NC | $60 | $60 | | $83 | $33 | $395 | $50 |
| ND | $70 | $70 | | $83 | $50 | $425 | $60 |
| NE | $71 | $71 | | $80 | $33 | $400 | $65 |
| NH | $74 | $74 | | $100 | $42 | $500 | $65 |
| NJ | $70 | $70 | | $100 | $55 | $425 | $60 |
| NM | $67 | $67 | | $90 | $40 | $395 | $65 |
| NV | $70 | $70 | | $130 | $65 | $575 | $65 |
| OH | $70 | $70 | | $100 | $45 | $395 | $55 |
| OK | $65 | $65 | | $80 | $45 | $500 | $55 |
| PA | $70 | $70 | | $85 | $40 | $425 | $60 |
| SC | $70 | $70 | | $65 | $30 | $395 | $50 |
| SD | $75 | $75 | | $88 | $50 | $525 | $60 |
| TN | $80 | $80 | | $100 | $45 | $395 | $45 |
| TX | $80 | $80 | | $90 | $45 | $395 | $85 |
| UT | $65 | $65 | | $90 | $40 | $425 | $40 |
| VA | $65 | $65 | | $100 | $40 | $395 | $75 |
| VT | $75 | $75 | | $145 | $60 | $425 | $65 |
| WI | $90 | $90 | | $140 | $70 | $675 | $115 |
| WV | $60 | $60 | | $40 | $18 | $325 | $45 |
| WY | $65 | $65 | | $80 | $48 | $500 | $60 |

## Section 2
## Payment to OptumHealth

Customer shall pay OptumHealth an Administrative Access Fee of fifty percent (50%) of the fee paid by Network Clients to Customer as a result of accessing Participating Providers for Chiropractic and Therapy Services. The Administrative Access Fee is a percentage of savings based on the difference between the contracted/discounted rate for Services paid by Network Clients and the rate established by law or the billed charges, whichever is applicable.

For purposes of clarity, if the provider's charge is $120, the regulatory rate is $100, the contracted rate is $60, and the Network Client's administrative fee is 20% of savings, OptumHealth's Administrative Access Fee is $100 – $60 = $40 X 20% = $8 X 50% = $4.