UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEIGHBORHOOD NEUROPATHY CENTER OF RENO, LLC, individually and on behalf of a class of similarly situated individuals,<br><br>                       Plaintiff,<br>  v.<br><br>MEDRISK, LLC,<br><br>                       Defendant. | Case No. 3:19-cv-00619-LRH-WGC<br><br>ORDER |

Before the Court is Defendant MedRisk, LLC's ("MedRisk") motion for summary judgment (ECF No. 20) of Plaintiff Neighborhood Neuropathy Center of Reno, LLC's ("Neighborhood Neuropathy") class action complaint (ECF No. 1). Neighborhood Neuropathy responded (ECF No. 21), and MedRisk replied (ECF No. 22). For the reasons articulated below, the motion is denied without prejudice.

### I.   BACKGROUND

MedRisk is a managed care organization which primarily works on workers' compensation claims. ECF No. 20, at 2. MedRisk sometimes contracts with various companies to serve as an intermediary between its' clients and health care providers. ECF No. 20, at 2. One such company is OptumHealth CareSolutions, Inc. ("Optum"). *Id.* Neighborhood Neuropathy is a health care provider in Optum's network. *Id.* Because of this relationship, MedRisk received Neighborhood Neuropathy's contact information. *Id.*

///

This action concerns nine faxes that MedRisk sent Neighborhood Neuropathy in 2019. ECF No. 1, at 4. These faxes notified Neighborhood Neuropathy of MedRisk's new and existing clients. ECF No. 1-1. The top of each fax contained MedRisk's logo as well as the heading "Network News." *Id.* Each fax usually notified Neighborhood Neuropathy of a "new client," and then asked that "[a]ll patients associated with the companies listed should be recognized and processed as a MedRisk network patient." *Id.* at 3. None of these faxes included an opt-out notice setting forth a way the recipient could ask MedRisk not to fax any more notices in the future. *Id.*

The Complaint alleges MedRisk violated the Junk Fax Prevention Act, 47 U.S.C. § 227 *et seq.* ("JFPA") by sending unsolicited advertisements that fail to contain an opt-out notice, as the statute requires. ECF No. 1, at 4. Neighborhood Neuropathy seeks to certify a class of similarly situated parties who also received faxes from MedRisk. *Id.* at 7. MedRisk argues, in its motion for summary judgment, that it is entitled to the entry of judgment in its favor because the faxes did not constitute "unsolicited advertisements" under the statute, and therefore did not need to contain opt-out notices. ECF No. 20.

## II.    LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence and all reasonably drawn inferences must be read in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 987, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). On those issues for which it bears the burden of proof, the moving party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.*

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which show a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### III.   DISCUSSION

The JFPA bans the faxing of unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). An advertisement is unsolicited if it "advertis[es] the commercial availability or quality of any property, goods or services [and] is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § (a)(5). The JPFA gives individuals or entities a private right of action to sue fax senders that send unsolicited advertisements and allows plaintiffs to receive at least $500 for each violation of the related Federal Communication Commission ("FCC") regulations. *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1080 (D.C. Cir. 2017) (citing 47 U.S.C. § 227(b)(3)).

The sole dispute here is whether MedRisk's faxes were "unsolicited advertisements." MedRisk argues no because the faxes were merely informational and/or indirect commercial solicitations. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015) (informational); *Robert Mauthe, M.D., P.C. v. Optum, Inc.*, 2018 WL 3609012 (E.D. Pa. July 27, 2018) (indirect solicitation).

In *Sandusky*, Medco, a pharmacy benefit manager, faxed Sandusky, a health care provider, lists of medicines available in the health care plans offered by the plan sponsors for whom Medco worked. *Id.* at 220. In essence, the faxes served to notify doctors which prescriptions would be cheaper for their patients. *Id.* The Sixth Circuit found these faxes to be purely informational, and

3

not unsolicited advertisements, as "the faxes [did not] promote the drugs or services in a commercial sense—they [were] not sent with hopes to make a profit, directly or indirectly, from Sandusky or the others similarly situated." *Id.* at 222.

Relatedly, in *Optum*, Optum sent unsolicited faxes to healthcare providers listed in its database requesting an update on their information. 2018 WL 3609012, at *2. Optum then would sell the updated database to third parties that manage health care networks and pay claims. *Id.* The faxes stated that the recipients would not be charged for the update and the faxes were not an attempt to sell them anything. *Id.* The district court found that the faxes did not constitute unsolicited advertisements, as the faxes were "indirect commercial solicitations or transactions with third parties." *Id.* at *4. Put differently, because Optum did not obtain a direct commercial benefit from the faxes, but had to sell the information to third parties, they were not considered direct "unsolicited advertisements."

Relying on both *Sandusky* and *Optum*, MedRisk contends that the faxes it sent are not unsolicited advertisements because it did not overtly seek to sell anything to the fax recipients. ECF No. 22, at 6. Aside from challenging the underlying legal basis of this conclusion, *see Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 467–68 (4th Cir. 2018), Neighborhood Neuropathy responds that at the very least, summary judgment should be deferred because discovery has yet to occur. ECF No. 21, at 9 (citing FED. R. CIV. P. 56(d)).

The Court finds that summary judgment is inappropriate at this juncture. First, unlike the informational faxes in *Sandusky*, Neighborhood Neuropathy is not being asked to perform a service to the benefit of its patients, but rather, is being asked to perform a service for MedRisk. That is, ensure that MedRisk appears on the proper billing statement. Second, while this service may very well be merely an "indirect" benefit to MedRisk like in *Optum*, no discovery has taken place to determine the exact nature of MedRisk's business model. *Cf. Optum*, 2018 WL 3609012, at *1 ("[t]he parties have now engaged in limited discovery on the issue of whether the fax was an advertisement or a pretext for an advertisement, and the defendants have moved for summary judgment.") Therefore, summary judgment at this time will be delayed until there has been more

4

1  of an opportunity to gather facts or evidence surrounding how MedRisk receives a benefit from
2  the faxes.

3  MedRisk asserts that any delay to its motion for summary judgment is inappropriate
4  because Neighborhood Neuropathy has failed to set forth in affidavit form the specific facts it
5  hopes to elicit from "additional" discovery. ECF No. 22, at 11–12. True, in most instances a party
6  seeking Rule 56(d) relief bears the burden of showing that "(1) it has set forth in affidavit form the
7  specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-
8  after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed.*
9  *Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Nevertheless, where a "summary
10 judgment motion is filed so early in the litigation, before a party has had any realistic opportunity
11 to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d)]
12 motion fairly freely." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck*
13 *Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

14 Although it was not improper for MedRisk to file an early summary judgment motion,
15 Neighborhood Neuropathy has not had a realistic opportunity to pursue discovery before filing a
16 response. The summary judgment motion was filed approximately one month after the initial
17 discovery hearing, and before any actual discovery took place. ECF No. 19. Therefore,
18 Neighborhood Neuropathy "cannot be expected to frame [its] motion with great specificity as to
19 the kind of discovery likely to turn up useful information, as the ground for such specificity has
20 not yet been laid." *Burlington N. Santa Fe R. Co.*, 323 F.3d at 774. Still, Neighborhood Neuropathy
21 has identified important areas of inquiry, including how exactly MedRisk receives a benefit from
22 the faxes. Accordingly, until there exists a more developed evidentiary record as to whether the
23 faxes constitute a direct or indirect benefit to MedRisk, consideration of summary judgment will
24 be deferred pursuant to Rule 56(d).

25 ///
26 ///
27 ///
28 ///

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that MedRisk's motion for summary judgment (ECF No. 20) is **DENIED** without prejudice.

IT IS FURTHER ORDERED that Neighborhood Neuropathy's request under FRCP 56(d) to defer consideration of MedRisk's motion for summary judgment is **GRANTED**.

IT IS SO ORDERED.

DATED this 6th day of January, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE